Council ready to proceed? Mr. Durham? Mr. Denham? Yes. Yes. May it please the court. My name is... Can we get more volume? Yeah. Let me start again. May it please the court. My name is Daryl Dahmer representing Donald Gaddis. The events occurred in... Before you start, are you willing to dismiss the claims against Winstead with prejudice so the district court's order is a final order over which we would have jurisdiction? Yes, your honor. I think the best way to explain the appellant's argument is this. If the dismissal had been of Mr. Winstead without prejudice for case law that Gaddis could take an appeal and urge the court with the district, this court, that the district court had jurisdiction. So just the fact that the dismissal was without prejudice doesn't mean that the order is not final. The test as to whether the order is final is whether the matter has been determined by the district court as final insofar as that court is concerned. The district court in this case actually closed the file and further there's no possibility given the procedural posture of this case that Mr. Winstead could ever... Gaddis could ever go back and seek any relief against Mr. Winstead in the district court. The reason for that is that the jurisdiction as to Winstead is supplementary jurisdiction. I don't think that's the reason. Now you may have a problem since this dismissal was without prejudice or it may be the fact that the statute of limitations in Indiana has now run and if that's the case then whatever the underlying reason may have been for the without prejudice dismissal, the clock keeps ticking and it's just too late. He can't come back even if he wants to. Otherwise, I think you would have to agree to dismiss him with prejudice for the reasons that your opponents stated in their brief. If you prevail, you might want to add him back in. You probably can't now because of the statute of limitations but I think that's the issue. Well, I think you're right, Your Honor. At the time that the case was appealed, when I looked at that issue, I don't think the statute of limitations would have run in Illinois but I think as of right now it has run and so I think maybe as a practical matter, there is no possibility against Mr. Winstead in any court but my point is if we had prevailed, if it had been dismissed without prejudice for jurisdictional reasons and then we prevailed in this court and then it came back down, that doesn't deprive the fact that the appeal, the jurisdictional posture of the case was that we had no possibility of getting any relief against Winstead in the district court. That's our position, Your Honor, but I think the statute of limitations also because of that, it has run that there's no possibility of being able to sue Mr. Winstead in any court. Did that answer your question, Your Honor? If I could then let me, I'm going to focus my remarks on the grant of summary judgment as to the officers. There's three officers, they're all Marion police officers. They came out to my client's house in Marion, Illinois on October 20th, 2019. I don't think there's any dispute at the request of one of the defendants in this case, a neighbor of Dorothy McCombs. You know, Mr. Dunham, you cited a number of cases that involve officers entering into a home to effectuate a warrantless arrest, but it's undisputed that the officers never entered inside, so I need to know why you think these cases help his claim. Well, they help the claim in a sense that he did have a constitutional right to stay in his home. But he didn't stand on that right. He say to the officers, you know, I don't care how many charges you're piling on. I'm in my home and I don't have to let you in unless or until you come back with a warrant. I had the same concern Judge Rovner has. This case, whatever else it may be, is not a case where the officers have literally entered the home. So we have to find some reason why standing outside the door is somehow the legal equivalent of what went on in the Payton case or the many other cases that we're talking about here. And I agree with that, Your Honor, and it's Gaddis' position that he was coerced to give up his constitutional rights. I don't think he should have to be a trained lawyer to be fully informed of his constitutional rights. Are you arguing that whether the officers coerced him onto the porch is an issue of fact or an issue of law? For me, it wasn't entirely clear from the brief. Your Honor, I think what the depositions reveal in the case is that Gaddis testified that he was told by the officers, you come out of the house. If you don't come out of the house, we're going to arrest you for resisting arrest, which we think is, in some cases, to the effect that we think that's coercive. And you cannot, you can acquiesce, of course, to waive your constitutional rights, but you cannot be coerced to do that. And that's exactly what he was told to do. We're going to pile on charges now. But isn't there a factual issue embedded in there? I mean, sometimes we'll ask, for example, would this threat deter a person of ordinary resolve from standing on his rights to stay inside? I can imagine conduct of the officers that would be so clearly coercive that a person would give up his right, and we might have a pulled a gun on him through the screen and said, come out or else. An ordinary person would perceive the coercion there. But just talking about throwing in some charges for disorderly conduct when you've got a whole panoply of legal rights in front of you, and in fact, Mr. Gaddis prevailed, you know, none of these things wound up sticking. It strikes me as different from the gun to the head. Well, I think it isn't to that level of coercion, but he did, he was incarcerated, Your Honor. And overnight, right? It wasn't long, right? Well, yes, but the point is that he never should have been incarcerated in the first place. And also, if it is a factual issue that needs to be determined, I don't think it can be determined based on depositions and summary judgment. They got the award of the summary judgment. We did, we also moved for summary judgment. Excuse me, are you arguing that there was no probable cause to arrest him for disorderly conduct? We do raise that in our brief, Your Honor, and that is one of the grounds we're raising on appeal. But that's not the focus of our attention, our main issue. Because he could have spent the night in jail because of the disorderly conduct, even if they had never talked about resisting arrest. I don't believe that's the case, Your Honor, because if he stayed in his home, they could not have arrested him. If they did, they would have violated his constitutional rights. Or they could have gotten a warrant. They could have sent somebody back to a judge and gotten a warrant. And now we got a judge looking at these facts to determine whether there's probable cause or not. That's why the Peyton rule is in place. So we're not going to have officers barging into somebody's home without a warrant. And the same rule should apply. They shouldn't be, and it's the additional charges that were being going to be piled on here were not disorderly conduct. It was resisting arrest. And those are different charges. Those are class A misdemeanor charges under Illinois law that could have landed him, if he'd been convicted, of a year in jail. So he didn't really have any, I think, effective choice but to come out of the house, given those threats. And if it didn't rise to a level of what a reasonable person would have done, that's what the trial should decide. Your Honor, I have reserved five minutes to rebuttal. I'm at this big clock here, and I'm just below five minutes. If there's any other questions, of course, I'd be delighted to answer them. Not for me. No questions, it looks like. Good morning. May I please support? My name is Jerry McDonald, and I represent the officers in this case. And I'll just try and jump right to the thrust of this. I think on the factual basis, excuse me, there's clearly probable cause for the arrest for the disorderly conduct. I really don't think that's the issue. And I think that you focused on what the issue is in this case. And that is, was the alleged threat of getting arrested for resisting arrest, was that so coercive that the man had to come out such that the district court's decision should be reversed? I know. Are you arguing that threatening him with additional charges doesn't rise to the level of coercion? Or are you arguing that the man had probable cause to believe he could be charged with resisting arrest? The former. I don't think I could say they had probable cause for the resisting arrest. But the question is, is that threat of being arrested for resisting arrest, does that rise to the level of coercion such that, you know, we're in a patent situation? So can I ask you, is the metric, how serious the addition? If we're all agreeing that this is a threatened charge for which there's no probable cause, and I agree with you, I don't see any reason at all to say that he was resisting arrest. He's standing there inside his own house. But are we supposed to look at how serious the add-on threat was? You know, if they had said, and we're going to arrest you for felon in possession of a firearm, you know, which is a law, and we're going to arrest you for, you know, make up whatever you want, a drug charge, also bogus. You know, does it depend on how serious the charge is, or does it depend on something else? Well, it's somewhat of a subjective standard. And I think it is, would a reasonable person feel coerced? Maybe I'm making up my own argument there. But it seems that that would be something to look at as to whether or not this gentleman actually felt coerced into coming out and that they violated his rights. But he might feel coerced if something as mushy as resisting arrest is what he's being threatened with. You know, what does it take to resist arrest? Saying, get out of my life, or does it mean pushing the police officer? Or does it mean, you know, what does it mean? You know, it's a fairly open-ended charge. Oh, I don't disagree. It is mushy. So, I mean, this is somewhat of a novel question on a kind of a fine line. Because as you said, it's not like they pulled the gun out and said, we're going to barge in there if you don't come out. You know, and I raised in my brief, I think the issue of qualified immunity on this issue, because it's certainly not clear, and it's certainly mushy. You know, the district court really didn't address the issue. It just kind of put in a footnote and said, there's obviously probable cause for the disorderly conduct, so we're not going to address the issue. You know, viewing all of the allegations in the light most favorable to Gaddis as we might, the only threat made was that the other defendants were acting like girls and leaving aside what on earth that is actually intended to mean or why on earth anyone— Some members of the panel wonder why it's so defamatory. You know, why anyone would choose to use it as an insult. Take a deep breath. Is that really enough to support an arrest for disorderly conduct? Well, I mean, I think that there's more than just that. Even in this in this deposition, and I cited it, Gaddis admitted that somebody may have taken his statements as being threatening, and that's not the comments about, you know, acting like a girl, whatever that may mean. We may have known what that meant 50 years ago, but I don't know if we know what it means right now. But there were that were perceived, and even he, even Gaddis admitted that those comments may have been seen threatening to him. I think that the probable cause for the disorderly conduct is, if that was all we're talking about, we probably wouldn't even be here. But I mean, I'm candid with you, and I know that the issue is whether or not a threat of being arrested for resisting arrest is enough. I would say that whether it matters or not, he only spent about an hour and a half at the jail getting processed, and it was back home. So I mean, that's pretty much my position. I probably have a little extra time, but I think it's a rather discreet issue. And I would, on the jurisdictional issue, I think that Mr. Dunham is correct at this point, because he would have had, under Illinois statute of limitations, he would have had a year to refile once that order was entered, and we're past that year. Right. Any further? Anything further, Mr. McDonough? No, unless somebody has a question, I'm done. Mr. Cantrell? Thank you, Your Honor. Good morning, and may it please the court. My name is Jonathan Cantrell. I represent Dorothy McCombs and Cameron Dunford, the private citizens who have false arrest claims brought against them before this court as a result of pendent supplemental jurisdiction. Just factually, I don't want to invade Mr. McDonough's province here, but I thought it may be helpful. I didn't think it was clear from the briefs, but on the coercion issue, the police report that is attached to the appendix on pages 86 and 87 states that Mr. Gattis is the one that opened the door and exited his home, and Officer Spinka testified, and that's on page A197 of the appendix, unequivocally that it was Mr. Gattis that opened the door and exited his home. Could I ask, I meant to ask Mr. McDonough this, but maybe you know, and if not, maybe he'll say, is Officer Spinka still a party in this case, or did he go away? I believe he is, Your Honor. He's still a party, Your Honor. All right, thank you. The confusion was he wasn't in the caption originally, and it never got put back in, we've just been going with that. Right, I noticed his absence, but thank you for that clarification. If we believe Gattis' version of events, which we must, McComb's statement to police that Gattis was out of control wasn't true, was it? He alleges, Your Honor, that Ms. McComb's statement to the police was inaccurate, and as a private, you know, attorney that doesn't do a lot of criminal work myself, I often latch onto a factual dispute and want to say, okay, there's an issue of material facts, your summary judgment may not be proper, but in this case, the analysis is different. We need to look at whether or not the officers had a reasonable basis to move forward with the arrest, and we can even imagine a world where Officer DiMatti arrives and Dorothy McCombs, Cameron Dunford, and Charles Winstead give him three different versions of what happens, as long as the officer can come up with a cogent reason why one of the three individuals is more credible than the others, the officer still has probable cause in that hypothetical scenario. In this case, you have three witnesses giving consistent versions of his behavior going across the street, pounding on the door, calling them cowards or little girls, and beyond that, stating something to the effect of, you want to go, old man, to Mr. Winstead, which some of the witnesses took as an invitation to fight, and then beyond that, when the officer DiMatti has taken those three statements, he crosses the street, approaches the home of Donald Gaddis, and Officer that he called them cowards or little girls, and at that point, and in Officer DiMatti's deposition, Officer DiMatti states, you know, that statement was significant, and I'm paraphrasing, but that statement was significant because it corroborated what Cameron Dunford had said, and that's when I made the decision to arrest. So I think the amount of probable cause, for lack of a better term, is substantial in this case, and the analysis could stop there as to my clients. The second issue that Judge Yandel mentioned in her order was the fact that for a private citizen to be liable, there also has to be a procurement or an instigation encouraging the officers to make the arrest. There's no evidence that that happened in this case. The Carey case, an Illinois First District Appellate Court case, is very helpful if the court is inclined to look at that issue. So are you saying that Ms. McCombs did not admit that she asked the officers to arrest Gaddis? Correct, Your Honor. I do not believe she asked the officers to make the arrest. I believe she called the officers on the phone, reported Mr. Gaddis's behavior, and my recollection in her deposition is merely that she told them that she was alarmed and disturbed and frightened for Mr. Winstead. And if I'm mistaken, I apologize. That's merely my recollection, Your Honor. But nonetheless, Mr. Dunford and Mr. Winstead had essentially similar versions of what happened, and since I'm running out of time, I just wanted to say that the Carey case out of the First District of Illinois cites to Odoretzi at length the Seventh Circuit decision, and also there's a recent Seventh Circuit decision, Sebulka v. City of Madison, that reaffirms the fact that probable cause is an absolute defense to these claims. Unless the court has any more questions, I thank you for your time, and I'd ask you to affirm as to Ms. McCombs and Mr. Dunford. Thank you, Counselor. Perfectly timed. Thank you, Your Honor. Let's see, Mr. Dunham, do you have anything? Oh, yes, Your Honor. I'll take my five minutes if I could. I want to make one point absolutely clear. I think the court understands it, but the point is that the officers at no point in time during this encounter ever had any right to affect an arrest on outcasts while he was in his home. So, Mr. Dunham, can I ask you, though, the Supreme Court has said that if you have probable cause to arrest for one offense, it doesn't matter if you don't have probable cause to arrest for others. The arrest itself is just a unit of time, you know, a thing that's done, and it's for later procedures to sort out what happens, you know, to add on things, and so I'm concerned about that in that if we break all of this down, of what legal significance is it that the officer says, and we're also going to charge anything, but they say you're also going to be charged with resisting arrest, when he's standing safely inside his home, he can say, you know, charge whatever you want, but I'm in my home and I have a right to be here. If that had happened, then the officers would either have had the choice of violating the Fourth Amendment and barging into his house without any exigent circumstances or any other exception that supports that, or the officers could have called for a warrant, having observed what they observed of the disorderly conduct behavior. So, what Mr. Gaddis chooses to do, which may have been prudent on his part, I don't know, but he chooses to acquiesce, he chooses to go outside, and so we're left with this factual question, where's the line between impermissible coercion and just a sensible weighing of one's options, and he decides, all right, enough is enough, you know, I'll go outside, and he's pretty quickly vindicated. Our position is, Your Honor, for Gaddis to be, give up his constitutional rights, it has to be voluntary. Why wasn't it voluntary? Why wasn't it just sort of a cold-headed assessment of the situation where he realizes that his right to stand there in his own house exists, but he's going to waive it. He's going to just go outside and let the police take him. Because it's not voluntary. Obviously, Your Honor, there are many cases where confessions and arrest are not voluntary, given the fact that they were coerced. But if you look at that line of cases, you would be shocked, I think, to see the kinds of behaviors that don't count as impermissible coercion, that just count as very strong persuasive measures, shall we say. And there are a line of cases along those lines, Your Honor. I don't doubt that at all. In fact, in many cases until recently in Illinois, the officers could just point out why to the suspect and trick him into a confession. But what they cannot do, and I cite one of the cases that I would like perhaps you to look at, is United States versus Miller, 450, February 3rd, 272, decided by this court, where you cannot threaten to arrest either a friend or paramour when you don't have any probable cause to do that. That's coercion. And that's what happened here. They're telling Gaddis, look, we think we've got the legal right to come into your house and arrest you. And if you don't come out voluntarily, that's what we're going to do. And the point is, they didn't have that right. And they probably, obviously, when you look at the positions, these officers weren't even aware of the Peyton rule. They thought they had the right to go into that house. They thought they had the right to force him to stay put, and they didn't. And so they did not have any authority to say anything to Gaddis, to say, look, to pile on additional charges. They violated his constitutional rights. They were wrong. They coerced him. And he could have turned around and just left the front, you know, his front door and flung into his living room and seen what would happen, couldn't he? Of course he could have. But then he's being told, we're going to charge you with additional crimes if you do that. And to get a suspect to do something. But one of the things they cannot do is lie about what their authority is, and whether they did it intentionally or not, that's what they did. They were going to bring additional charges they had no right to bring. Thank you, counsel. Time's expired. I think we've heard all the counsel, and case will be taken